Wilborn STEVENS, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Lockheed Shipbuilding Co., Respondents.

No. 89–70224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1990.

Decided June 22, 1990.

As Amended Aug. 7, 1990.

able alternative employment is or was realistically available to the employee, which must be demonstrated by the employer, but we reject the retroactive aspect of the Board's holding. Until there is a job that the injured worker can perform, his injury is totally disabling.

## STANDARD OF REVIEW

We scrutinize Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. "[T]he Board may not substitute its views for those of the administrative law judge or engage in a *de novo* review of the evidence, and it must accept the administrative law judge's factfindings if they are supported by substantial evidence." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327 (9th Cir.1980). We conduct an independent review of the administrative record. *Id.*

Mary Alice Theiler, Gibbs, Douglas, Theiler & Drachler, Seattle, Wash., for petitioner.

Janet Dunlop, U.S. Dept. of Labor, Washington, D.C., for respondent, Director, Office of Workers' Compensation Programs.

Russell Mertz, Witherspoon, Kelley, Davenport & Toole, Seattle, Wash., for respondent, Lockheed.

Stephen C. Embry, Embry and Neusner, Groton, Conn., for the amicus curiae, Boilermakers Intern. Local 620.

Diane L. Middleton, San Pedro, Cal., for amicus curiae, Maritime Claimants' Ass'n.

Before FARRIS, PREGERSON and FERGUSON, Circuit Judges.

FARRIS, Circuit Judge:

This case raises a question of interpretation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.: When does an employee's disability that was total become partial for purposes of compensation under 33 U.S.C. § 908? The Benefits Review Board held that when an employer makes a showing that there was suitable alternative employment reasonably available to a disabled employee, total disability becomes partial and the change of status is retroactive to the date of maximum medical improvement. We reverse, rejecting *Berkstresser v. Washington Metropolitan Area Transit Authority*, 16 BRBS 231 (1984). We agree that disability becomes partial when suit-

■ The Benefits Review Board does not make policy; its interpretations of the Longshore and Harbor Workers Compensation Act are not entitled to any special deference. *Providence Washington Insurance Co. v. Director, Office of Workers' Compensation Programs*, 765 F.2d 1381, 1384 (9th Cir.1985). We will only respect the Board's interpretation if it is "reasonable and reflects the policy underlying the statute." *Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 812 F.2d 518, 521 (9th Cir. 1987) (citations omitted).

## FACTS

Wilborn K. Stevens injured his right arm in a work related accident on May 8, 1981. He received appropriate medical treatment, including two surgeries, and reached maximum medical improvement on November 29, 1982. Maximum medical improvement is attained when the injury has healed to the full extent possible. *See Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969). The

ALJ held that Stevens suffered a 20% loss of use in his right arm.

Lockheed voluntarily paid *temporary total disability* compensation to the claimant from May 8, 1981 (date of injury), until February 6, 1983, at which time it began to pay *permanent partial disability* compensation for a 20% loss of use of a right arm.

At a December 16, 1985 hearing on Stevens's claim for compensation before an administrative law judge, a vocational specialist established that Stevens had a residual earning capacity. Stevens could physically perform and get a job in a convenience food store or a self-service gas station as of September 30, 1985. Lockheed does not contend that these jobs were shown to be available to Stevens at any earlier date.

The ALJ awarded Stevens a) *temporary total disability* compensation from May 9, 1981 to November 29, 1982, b) *permanent total disability* compensation from November 30, 1982 until September 29, 1985 (the date after which employment was found to be available), and c) *permanent partial disability* from September 30, 1985 until benefits ended by schedule (62.4 weeks).[1]

Lockheed appealed to the Benefits Review Board, which vacated and reversed the ALJ's award of *permanent total disability* between November 30, 1982 and September 29, 1985, finding that Stevens was only entitled to *permanent partial disability* benefits for that time period. The Board retroactively applied the showing of a suitable alternative available job to the date of maximum medical improvement.

## DISCUSSION

*The Board erred in holding, as a matter of law, that total disability becomes partial, retroactive to the time of maximum medical improvement upon a later showing of suitable alternative available employment.*

■ Once an employee has shown that his work-related injury prevents him from performing his former job, the burden shifts to the employer to show that there is "suitable alternate work ... available in the community." *Hairston v. Todd Shipyards Corp.*, 849 F.2d 1194, 1996 (9th Cir. 1988). If the employer fails to meet this burden, the disability is considered total and, most likely, permanent. *See id.*

■ To satisfy its burden of showing suitable alternative available employment "the employer must point to *specific* jobs that the claimant can perform." *Bumble Bee Seafoods*, 629 F.2d at 1330 (emphasis in original). A showing that a claimant might be physically able to perform general work is insufficient. *Hairston*, 849 F.2d at 1196. In determining the employee's ability to perform possible work, the Board must consider the claimant's technical and verbal skills, as well as the likelihood, given the claimant's age, education, and background, that he would be hired if he diligently sought the possible job. *Hairston*, 849 F.2d at 1196; *see also New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042–43 (5th Cir.1981).

We place this burden on the employer, "[o]therwise, the claimant would have the difficult burden of proving a negative, requiring him to canvass the entire job market." *Bumble Bee Seafoods*, 629 F.2d at 1329.

Lockheed does not contest that Stevens properly received *temporary total disability* payments up until the time he attained maximum medical improvement. At that

---

1. Permanent total disability pays 66⅔% of the employee's average weekly wage for the duration of the disability. 33 U.S.C. § 908(a). Temporary total disability pays 66⅔% of the employee's average weekly wages during the duration of the disability. 33 U.S.C. § 908(b). Permanent partial disability pays 66⅔% of the employee's average weekly wage for a length of time determined by schedule. 33 U.S.C. § 908(c). Temporary partial disability pays 66⅔% of the difference between the injured

employee's average weekly wages before the injury and his wage earning capacity after the injury in the same or another job, for not more than five years. 33 U.S.C. § 908(e).

For Stevens, the schedule under permanent partial disability provides for 312 weeks of compensation for the loss of an arm. Since Stevens' disability was only 20%, this works out to be 62.4 weeks of compensation (.20 × 312), regardless of whether there is an actual income loss.

time his temporary disability became permanent; it was temporary so long as there was a possibility or likelihood of improvement through normal and natural healing. *See Watson,* 400 F.2d at 654.

■ The central question, however, is left unanswered by the existing case law: When does a *total* disability become *partial* ? Our analysis must focus on the statute and the policy concerns embodied in the Act.

The Longshore and Harbor Workers' Compensation Act provides coverage for four different categories of disabilities: permanent total disability (§ 908(a)); temporary total disability (§ 908(b)); permanent partial disability (§ 908(c)); and temporary partial disability (§ 908(e)). This statutory structure indicates two independent areas of analysis—*nature* (or duration) of disability and *degree* of disability. Temporary and permanent go to the nature of the disability. Total and partial go to the degree of the disability. This differentiation leads us to find maximum medical improvement to be an indication of permanent versus temporary disability and availability of suitable alternative employment to be an indication of partial versus total disability. *See also Bumble Bee,* 629 F.2d at 1328 ("The degree of physical impairment is measured by its impact on the worker's earning capacity.").

The statutory definition of "disability" supports using the date of available suitable alternative employment as the indicator for when total disability becomes partial.

"Disability" means *incapacity* because of injury *to earn* the wages which the employee was receiving at the time of injury in the same or any other employment; but such term shall mean permanent impairment, determined (to the extent covered thereby) under the guides to the evaluation of permanent impairment promulgated and modified from time to time by the American Medical Association, in the case of an individual whose

claim is described in section 910(d)(2) of this title.

33 U.S.C. § 902(10) (emphasis added).[2] This definition encompasses an economic, wage-earning aspect. *See also McBride v. Eastman Kodak Co.,* 844 F.2d 797, 799 (D.C.Cir.1988) (An "exclusively physical view of disability defeats the purpose of the LHWCA. The statute's equation of disability with 'wage-earning capacity' reflects a concern for the economic consequence of job-related injuries...."). The incapacity *to earn* is a result not of the permanent or temporary character of the disability, but the total or partial character of the disability. *See Bumble Bee,* 629 F.2d at 1328 ("The degree of physical impairment is measured by its impact on the worker's earning capacity."). A claimant is only able to work when there is suitable work available that he is then capable of performing. *See Hairston,* 849 F.2d at 1196; *American Mutual Insurance Co. v. Jones,* 426 F.2d 1263, 1266 (D.C.Cir.1970); *see also Duncanson–Harrelson Co. v. Director, Office of Workers' Compensation Programs,* 644 F.2d 827 (9th Cir.1981) (unavailability of work a claimant is able to perform is one of the considerations in determining disability).

Notwithstanding the Board's position in this case, some of its other decisions support the interpretation that we now adopt. *Williams v. General Dynamics Corp.,* 10 BRBS 915, 918 (1979), and *Thompsom v. McDonnell Douglas Corp.,* 17 BRBS 6, 9 (1984), found the date of possible rehiring (a residual earning capacity) not a good indication of the claimant's maximum medical improvement. This suggests the reverse, that the date of maximum medical improvement is not a good indication of the date of possible rehiring.

The Board's position that an employee is no more or less capable of performing a specified task between the time he reached maximum medical improvement and a later showing of available work is not inaccurate. However, to hold that a disability changes from total to partial at the same

---

**2.** There was no argument made that section 910(d)(2), addressing occupational injury that

appears once a worker is retired, applies in this case.

time it changes from temporary to permanent advances the medical aspect of the disability while ignoring its economic aspect—the degree of the disability. It assumes, as well, that the job market was the same at the time of maximum medical improvement as when the job showing was made. This is unclear. It could be that a new job within the disabled claimant's abilities appeared only sometime after maximum medical improvement was attained or that only with training and education *after* attaining maximum medical improvement will there be a job suitable for the claimant. *Cf. Darden v. Newport News Shipbuilding & Dry Dock Co.*, 18 BRBS 224 (1986) (only suitable alternative shown to exist was a job not even created until some time after maximum medical improvement). Since courts have no crystal ball, the pivotal fact must be proof of an actual job that the claimant can perform and realistically get if diligently sought.

This does not prevent an employer from satisfying the ALJ that there was suitable alternative available work at the time of maximum medical improvement, even several years after that point. The employer merely needs to overcome the inherent limitations of credible and trustworthy evidence. *See, e.g., Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 542–43 (4th Cir.1988) (employer could meet burden of showing available alternate employment by presenting evidence of jobs which, although no longer open when located and identified, were available during time claimant was able to work); *Jones v. Genco, Inc.*, 21 BRBS 12 (1988) (finding suitable available jobs existed in 1979 based on 1983 labor market survey and fact that rehabilitation specialist had met with employee in 1978–79 and offered to place employee in a job). Such a finding would still be subject to our review under the substantial evidence standard.

Finally, the interpretation we adopt reflects the Act's interest in facilitating the rehabilitation of injured employees and their re-entry into the work force by creating an incentive for employers to show promptly the availability of jobs. That incentive has the effect of bringing to the claimant's attention possible jobs of which he might not otherwise know, even though employers have no obligation to find jobs for claimant.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.