Mary RASMUSSEN, Petitioner,

v.

GENERAL DYNAMICS CORPORATION, ELECTRIC BOAT DIVISION, & Director of the United States Department of Labor's Office of Workers Compensation, Respondents.

No. 1296, Docket 92–4220.

United States Court of Appeals, Second Circuit.

Argued April 1, 1993.

Decided May 4, 1993.

Stephen C. Embry, Groton, CT (Timothy C. Spayne, Embry & Neusner, of counsel), for petitioner.

Norman P. Beane, Jr., Boston, MA (Edward J. Murphy, Jr., Diane M. Broderick, Murphy & Beane, of counsel), for respondent General Dynamics Corp., Elec. Boat Div.

Karen B. Kracov, Atty., U.S. Dept. of Labor, Washington, DC (Judith E. Kramer, Deputy Sol., Carol A. De Deo, Associate Sol., Charity I. Benz, Associate Sol., Samuel J. Oshinsky, Counsel for Longshore, of counsel), for respondent Director of the U.S. Dept. of Labor's Office of Workers Compensation.

Before: OAKES, PIERCE and PRATT, Circuit Judges.

OAKES, Circuit Judge:

Mary Rasmussen appeals from a final order of the Benefits Review Board of the United States Department of Labor granting her compensation for binaural rather than monaural hearing loss. The Board determined that § 8(c)(13)(E) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 908(c)(13)(E) (1988); requires that monaural hearing impairments be converted to binaural hearing percentages, pursuant to the American Medical Association's *Guides for the Evaluation of Permanent Impairment* ("AMA Guides"). After conversion to binaural loss, Rasmussen's impairment was compensated under § 8(c)(13)(B) rather than under § 8(c)(13)(A), the provision which sets benefits for monaural loss. Rasmussen contests this reading of the LHWCA as does the Director of the Department of Labor's Office of Workers Compensation (the "Director"). We agree with Rasmussen and the Director and reverse.

## BACKGROUND

Rasmussen has worked as a welder for General Dynamics Corporation's Electric Boat Division ("Electric Boat") since 1975.

As a result of surgery in 1962, Rasmussen had a 60 percent monaural hearing loss in her right ear prior to joining Electric Boat. At Electric Boat, she has been exposed to noise from her own welding work as well as to noise generated by shearing and bending machines used in the vicinity. The cumulative effect of her preemployment hearing loss and her occupational exposure caused Rasmussen to suffer a 100 percent hearing loss in her right ear.

Rasmussen filed for compensation benefits under the LHWCA for occupational noise-induced hearing loss. Pursuant to § 19(c) of the LHWCA, she was granted a hearing before an administrative law judge (the "ALJ"). The ALJ found that Rasmussen had suffered a compensable employment-related hearing loss resulting from on-the-job exposure to excessive noise. Although Rasmussen had a measurable hearing loss only in her right ear, the ALJ converted the monaural loss to its binaural equivalent, using the formula set out in the AMA Guides. Thus, rather than awarding Rasmussen 52 weeks of benefits for her 100 percent monaural hearing loss as dictated by § 8(c)(13)(A), the ALJ converted her impairment into a 16.67 percent binaural loss, which resulted in 33.33 weeks of benefits under § 8(c)(13)(B).

Rasmussen appealed to the Benefits Review Board (the "Board"), arguing that her hearing loss should be compensated as a monaural impairment under § 8(c)(13)(A). The Board affirmed the ALJ's determination, holding that § 8(c)(13)(E), by requiring the use of the AMA Guides, mandates the conversion of monaural hearing loss to binaural loss. According to the Board, § 8(c)(13)(A) is applied only to monaural loss resulting from a traumatic injury to the ear. Noise-induced loss of hearing, on the other hand, must be converted to binaural loss and then compensated under § 8(c)(13)(B).

Rasmussen appeals the Board's determination under § 21(c) of the LHWCA.

## DISCUSSION

We review decisions of the Board for errors of law and adherence to the substan-

tial evidence standard in its review of the ALJ's factual determinations. *See* 33 U.S.C. § 921(b)(3) (1988); *see, e.g., Whitmore v. AFIA Worldwide Ins.,* 837 F.2d 513, 515 (D.C.Cir.1988); *Todd Shipyards Corp. v. Director, OWCP,* 792 F.2d 1489, 1491 (9th Cir. 1986). This court has recently decided that the Director's interpretation of the LHWCA is entitled to deference over the views of the Board. *Director, OWCP v. General Dynamics Corp. (Bergeron),* 982 F.2d 790, 795 (2d Cir.1992). As we noted, .

> [w]hen the responsibility for administering an act has been split, the Supreme Court has directed us to defer to the office that has the policy-making authority. Congress delegated to the Secretary of Labor the power to prescribe rules and regulations under the Act. In turn, the Secretary set up the Office of Workers' Compensation Programs, the head of which is the Director. The Secretary delegated to this Office "all functions of the Department of Labor with respect to the administration of benefits programs" under the Act, and designated the Director to represent her in all review proceedings. Thus, the Director, as the policymaking authority, is to be accorded deference.

*Id.* at 795 (citations omitted).

■ The Director's interpretations of the LHWCA are, therefore, entitled to deference so long as they are not unreasonable or contrary to the purposes of the statute or to clearly expressed legislative intent. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45 & nn. 9, 11, 104 S.Ct. 2778, 2781–83 & nn. 9, 11, 81 L.Ed.2d 694 (1984). The Board, as it is not a "policy-making" body, is entitled to no special deference. *Potomac Electric Power Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). *See also Zapata Haynie Corp. v. Barnard, II,* 933 F.2d 256, 258 (4th Cir.1991); *Stevens v. Director, OWCP,* 909 F.2d 1256, 1257 (9th Cir.1990), *cert. denied,* 498 U.S. 1073, 111 S.Ct. 798, 112 L.Ed.2d 860 (1991).

On this appeal, the Director has urged that we reverse the Board's decision and grant Rasmussen benefits based on monaural hearing loss. According to the Director and Ras-

mussen, the Board's reading of the LWHCA effectively eliminates § 8(c)(13)(A).

The applicable statutory provision reads as follows:

Section 8. Compensation for Disability

. . . . .

(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, ... and shall be paid to the employee, as follows:

. . . . .

(13) Loss of hearing:
  (A) Compensation for loss of hearing in one ear, fifty-two weeks.
  (B) Compensation for loss of hearing in both ears, two hundred weeks.

. . . . .

(E) Determinations of loss of hearing shall be made in accordance with the guides for the evaluation of permanent impairment as promulgated by the American Medical Association.

. . . . .

(19) Partial loss or loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.

LHWCA § 8(c)(13)(A), (B), (E) & (c)(19). 33 U.S.C. § 908(c)(13)(A), (B), (E) & (c)(19).

The Board has interpreted § 8(c)(13)(A) to apply only in cases where the claimant has suffered from traumatic injury to one ear; noise-induced hearing loss, according to the Board, must be converted under the AMA guides to binaural loss and compensated accordingly. Relying on § 8(c)(13)(E) which states that determinations of loss "shall be made in accordance with the guides," the Board calculated Rasmussen's impairment using the AMA Guides' formula for converting monaural to binaural hearing loss.

■ We find this reading of the statute untenable. As the Fourth Circuit noted in a similar case, "the Board majority erred by ignoring the [statutory] formula provided by subsection (A) for calculating benefits where

there is a ratable loss in only one ear." *Garner v. Newport News Shipbuilding & Dry Dock Co.*, 955 F.2d 41 (4th Cir.1992) (table) (unpublished), *reported unofficially* at 25 B.R.B.S. 122 (CRT), *rev'g* 24 B.R.B.S. 173 (1991) (en banc). Although the AMA Guides recommend that monaural loss be converted to binaural loss, just as the Guides recommend that "all impairments should be expressed as impairments of the whole person," this suggestion does not override the explicit statutory subsection providing benefits for victims of monaural hearing loss. The AMA Guides prescribe certain methods for calculating hearing loss and for converting monaural to binaural loss; the Guides do not, however, determine when such a conversion should be made. According to the AMA Guides,

> [e]ach administrative or legal system using permanent impairment as a basis for disability rating should define its own process for translating knowledge of a medical condition into an estimate of the degree to which the individual's capacity to meet personal social, or occupational demands, or to meet statutory or regulatory requirements, is limited by the impairment.

The AMA Guides at 4. The statute, which serves as our touchstone, provides for monaural loss. In light of the statutory directive, we do not believe Congress intended to compensate only for binaural loss.

Moreover, the Fourth Circuit in *Garner* noted that while the Board's interpretation would result, in the case of non-traumatic hearing loss, in the effective elimination of § 8(c)(13)(A) from the LWHCA, the Director's would not.

> [W]e find the Director's view of the relevant statutory provisions to be not only reasonable, but in clear harmony with the principles of statutory construction. It is well settled that a statute must not be interpreted to render a portion of the statute meaningless or without effect.

*Garner*, 25 B.R.B.S. at 124(CRT).

■ The Board contends that its interpretation does not eviscerate § 8(c)(13)(A) because that provision may still be applied to cases of hearing loss due to traumatic injury. This reading of the statute, however, has no basis. Nothing in the language of the LWHCA, in the legislative history, *see* H.R.Rep. No. 570, 98th Cong., 2d Sess. 27 (1984), *reprinted in* 1984 U.S.S.C.A.N. 2734, 2760, or implicit in the remunerative purpose of the statute, *see Potomac Electric Power Co.*, 449 U.S. at 281, 101 S.Ct. at 516, permits the Board to distinguish between types of monaural hearing loss. We agree with the Director that the Board's reading is contrary to the language of the statute. If a claimant has a monaural impairment rating under the AMA Guides of 0 percent in the better ear, she has a "loss of hearing" within the meaning of § 8(c)(13) in only one ear and is to be compensated accordingly under § 8(c)(13)(A).

## CONCLUSION

For the reasons discussed above, we reverse.