**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AREL PRICE,

                      *Petitioner,*

        v.

STEVEDORING SERVICES OF AMERICA,
INC.; EAGLE PACIFIC INSURANCE
COMPANY; HOMEPORT INSURANCE
CO.; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS,

                      *Respondents.*

No. 08-71719

BRB No.
07-0567

OPINION

On Petition for Review of a Final Order
Of the Benefits Review Board

Argued and Submitted
October 7, 2009—Portland, Oregon

Filed December 15, 2010

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Ronald M. Whyte,
Senior District Judge.*

Opinion by Judge N.R. Smith;
Concurrence by Judge O'Scannlain

---

   *The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Joshua T. Gillelan II (argued), Longshore Claimants' National Law Center, Washington, D.C., for petitioner Arel Price.

Russell A. Metz, Seattle, Washington, for respondents Stevedoring Services of America and Eagle Pacific Insurance Company.

Gregory F. Jacob, Rae Ellen James, Mark A. Reinhalter, Matthew W. Boyle, U.S. Department of Labor, for the Federal Respondent, Director, Officer of Workers' Compensation Programs.

## OPINION

N.R. SMITH, Circuit Judge:

Interest on past due disability payments under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 US.C. § 901 et seq., is properly calculated as simple interest at the rate defined in 28 U.S.C. § 1961(a).

We have jurisdiction under 33 U.S.C. § 921(c), and we affirm the decision of the Department of Labor Benefits Review Board ("BRB" or "Board").

## I.   FACTUAL AND PROCEDURAL HISTORY

Arel Price ("Price") was injured by a falling ship-lashing-chain on October 2, 1991, while employed by Stevedoring Services of America, Inc. ("Stevedoring"). Price had surgery for his injury on April 22, 1992, and returned to work on November 24, 1992. Price worked from that day until July 2, 1998, when he stopped working on the advice of a physician.

Though Price's claims for his injury had not yet been formally adjudicated, Stevedoring paid Price temporary total disability workers' compensation payments of $676.89 per week from the date he was injured until January 4, 1992. Later, in 1997, Stevedoring also reimbursed Price's disability insurance carrier $21,206.00 for compensation due Price for his injury during the time period from January 4, 1992, until November 23, 1992.

Notwithstanding these payments, the parties disagreed concerning the proper amount of disability benefits. The Commissioner therefore referred the case to an Administrative Law Judge ("ALJ"). The ALJ subsequently determined Price's average weekly wage at the time of injury to be $333.87. Upon eventual appeal of that decision to the Ninth Circuit, we remanded Price's average weekly wage for reconsideration. *See Stevedoring Servs. of Am., Inc. v. Price*, Nos. 02-71207 & 02-71578, 2004 WL 1064126, at *2-3 (9th Cir. May 11, 2004).

On remand, Price challenged the interest calculation on his past due disability payments. He contended: 1) the interest rate defined in 26 U.S.C. § 6621 (the provision of the tax code defining the interest rate applicable to over- or under-payment of taxes) or, in the alternative, 2) annually compounded interest under 28 U.S.C. § 1961(b) should apply to his past due payments. After hearing argument, the ALJ first revised Price's average weekly wage to $1,198.09. Because two-thirds of Price's average weekly wage ($798.73) exceeded the fiscal year 1991 maximum compensation rate ($699.29 a week), *see* 33 U.S.C. § 906, the ALJ awarded Price compensation at the 1991 fiscal year maximum. The ALJ also awarded Price simple interest on past due compensation at the rate established in 28 U.S.C. § 1961(a).[1] 28 U.S.C. § 1961(a)

---

[1]Title 28 U.S.C. § 1961(a) states that interest in federal civil cases "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as pub-

defines interest for post-judgment interest payable on United States district court judgments and does not directly apply to compensation under the LHWCA. However, the Board has used the rate defined in that section to award simple interest on past due payments since 1984. *See Grant v. Portland Stevedoring Co.*, 16 BRBS 267, 270 (1984). The 28 U.S.C. § 1961(a) rate changes with fluctuations in the market as it is tied to the weekly average of one-year United States treasury bonds.

Price appealed the ALJ decision to the Board, making the same arguments he presented to the ALJ. The Board, citing *Reposky v. International Transportation Services*, 40 BRBS 65 (2006), rejected Price's argument regarding the applicable maximum rate of compensation. The Board likewise rejected Price's argument regarding interest, affirming the ALJ's decision to award simple interest at the rate determined by 28 U.S.C. § 1961(a).

Price now appeals.

## II.   DISCUSSION

### A.   Standard of Review

The only question before us is one of statutory interpretation. When interpreting the LHWCA, we look first to the plain language of the statute. *Stevedoring Servs. of Am. v. Price*, 382 F.3d 878, 890 (9th Cir. 2004) (citing *Bowen v. Director, OWCP*, 912 F.2d 348, 351 (9th Cir. 1990)). If the meaning of the Act is clear, that is the end of our inquiry. *See Chevron U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837,

---

lished by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

Title 28 U.S.C. § 1961(b) goes on, stating that "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually."

842-43 (1984). If the statute is "silent or ambiguous" with respect to a specific issue, however, we look to the position of the agency. *Id.* at 843; *see Found. Constructors, Inc. v. Director, OWCP*, 950 F.2d 621, 625 (9th Cir. 1991).

[1] With respect to the LHWCA, we deal with two administrative entities, the Board and the Director. "The Board's interpretation of the LHWCA is a question of law reviewed de novo and is not entitled to any special deference." *Price*, 382 F.3d at 883 (citing *Stevedoring Servs. of Am. v. Director, OWCP*, 297 F.3d 797, 801-02 (9th Cir. 2002)). However, "we accord 'considerable weight' to the construction of the statute urged by the Director of the Office of Workers' Compensation Programs, as he is charged with administering it." *Force v. Director, OWCP*, 938 F.2d 981, 983 (9th Cir. 1991). "We will defer to the Director's view unless it constitutes an unreasonable reading of the statute or is contrary to legislative intent." *Matson Terminals, Inc. v. Berg*, 279 F.3d 694, 696 (9th Cir. 2002) (citing *Chevron*, 467 U.S. at 842-45).

## B.   Limits on Compensation

Title 33 U.S.C. § 906(b) and (c) establish a maximum limit on compensation under the LHWCA. This maximum limit is calculated each fiscal year. 33 U.S.C. § 906(c). Price argues that the ALJ erred in applying the maximum compensation rate for fiscal year 1991 (the year Price became disabled). Price contends the ALJ should have applied the maximum compensation rate in effect for the year the ALJ issued his decision: fiscal year 2000.

[2] As explained in our recent opinion in *Roberts v. Director, OWCP*, No. 08-70268 (9th Cir. November 10, 2010), 33 U.S.C. § 906(b) and (c) require us to apply the maximum compensation rate from the fiscal year in which the individual becomes entitled to compensation (i.e., the date of injury), not the rate in place for the fiscal year when the ALJ issues a formal compensation award. Therefore, the Board and the ALJ

did not err by capping Price's compensation by the fiscal year 1991 rate.

## C.    Applicable Interest Rate

**[3]** As we have stated before, the LHWCA contains no express provision with respect to interest on past due payments. *See Found. Constructors*, 950 F.2d at 625. As the statute is silent on the issue of interest, the question before us is whether the Director's proposed construction of the Act is unreasonable. *See id.* We will not "substitute our own construction 'for a reasonable interpretation made by the administrator of an agency.' " *Id.* (quoting *Chevron*, 467 U.S. at 843).

**[4]** The Director's position,[2] that simple interest on past due payments should be awarded at the rate defined in 28 U.S.C. § 1961(a), is not unreasonable. In the absence of any reference to interest in the Act, we measure the reasonableness of the Director's position against the Act's general purpose of compensating disabled employees. *See id.* (determining whether interest is appropriate on past due payments based on "the remedial intent of the Act").[3]

**[5]** Awarding simple interest at the rate defined in 28 U.S.C. § 1961(a) is not an unreasonable method of compensating a claimant for past due compensation. Since the statute ties the interest rate to the one-year United States treasury bill

---

[2]The Director's position is clearly laid out in his brief to this panel. *See Transbay Container Terminal v. U.S. Dep't of Labor*, 141 F.3d 907, 910 (9th Cir. 1998) (quoting *Force*, 938 F.2d at 983) (noting that the Director's position may be presented as a litigating position).

[3]We have previously held that interest on past due compensation may be appropriate to compensate a disabled worker. *See Found. Constructors*, 950 F.2d at 625. We later determined that interest on past due payments was mandatory. *See Matulic v. Director, OWCP*, 154 F.3d 1052, 1059 (9th Cir. 1998). We have never mandated a specific interest rate nor defined any standard beyond the Act's general purpose of compensating disabled workers when evaluating interest awards.

rate, the interest rate applicable to past due payments adjusts with changes in the market. *See* 28 U.S.C. § 1961. In this way, the interest rate of § 1961(a) approximates the interest one could earn on an investment over a period of time, adjusted for changes in the market. Of course, Price suffered some loss due to the delay in his payment. However, applying a market-sensitive interest rate to past due compensation is an appropriate—and certainly not an unreasonable—way to compensate for this loss.

In determining whether the 28 U.S.C. § 1961(a) rate reasonably fulfills the general compensatory objective of the Act, we also consider other provisions of the Act which compensate an employee for delay. It is salient to this inquiry to recognize that the Act specifically provides compensation for late payments. For payments due under the Act but not formalized in a compensation order, any payments not paid within 14 days of the time they are due are subject to a penalty of 10% of the unpaid amount. *See* 33 U.S.C. § 914(e). If payments are mandated by a compensation order, this penalty is 20%. *Id.* § 914(f). These penalties are separate from and in addition to interest awarded for past due payments by the ALJ at the 28 U.S.C. § 1961(a) rate.

Price ignores the late payment penalty provisions of 33 U.S.C. § 914 in arguing that interest awarded under 28 U.S.C. § 1961(a) is unreasonable. He argues that the interest rate defined in 26 U.S.C. § 6621 better approximates the cost of borrowing money for a disabled employee. Price further contends that the Director's position (using an interest rate approximating interest earned on saved money) is unreasonable because, in reality, most disabled employees will actually need to borrow.

[6] As an initial matter, we have no evidence before us indicating whether most disabled employees must actually borrow funds while waiting for a determination of benefits. The only relevant inquiry is whether the Director's position is

unreasonable with respect to all claimants. Nevertheless, even if Price is correct that most claimants borrow, we cannot say that the Director's position is unreasonable. A disabled employee is compensated for past due payments at the interest rate defined in 28 U.S.C. § 1961 in addition to the penalty of either 10 or 20 percent defined in 33 U.S.C. § 914; this is simply not an unreasonable estimate of the employee's actual loss, even if the employee borrowed funds.[4]

**[7]** In the alternative, Price argues that, if this panel upholds the Board's use of the interest rate in 28 U.S.C. § 1961(a), the interest rate must be computed as compound, not simple interest. While Price correctly points out that, under 28 U.S.C. § 1961(b), federal courts use compound interest for post-judgment interest, that is of little significance here. First, 28 U.S.C. § 1961 does not mandate compound interest for pre-judgment interest—the type of interest at issue in this case. Furthermore, the Director is not bound to accept all the provisions of 28 U.S.C. § 1961(b) in determining that simple interest at the § 1961(a) rate is reasonable compensation for past due compensation in LHWCA cases.

Our task is not to precisely determine Price's individual loss. Nor are we persuaded by policy arguments as to why an interest rate other than that urged by the Director would be preferable. The only question before us is whether the Director's position regarding simple interest at the 28 U.S.C. § 1961(a) rate is unreasonable, and we conclude that it is not.

**AFFIRMED.**

---

[4]Price also argues that, unless we apply the higher interest rate of 26 U.S.C. § 6621, employers will be able to profit from delaying payments to a disabled employee. In light of the Act's specific penalties for delay defined in 33 U.S.C. § 914, this argument is without merit.

O'SCANNLAIN, Circuit Judge, concurring specially:

I concur in the court's opinion, which faithfully applies our precedents extending deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the Director of the Office of Workers' Compensation Programs' litigating positions interpreting the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq. See, e.g.*, *Gilliland v. E.J. Bartells Co.*, 270 F.3d 1259, 1262 (9th Cir. 2001). In my view, however, our rule mandating deference to the Director's reasonable litigating positions cannot be reconciled with Supreme Court precedent.

One of our earliest cases—if not our very first—to state that Chevron deference "extends not only to regulations articulating the Director's interpretation, but also to litigating positions asserted by the Director in the course of administrative adjudications" was *Mallott & Peterson v. Director, Office of Workers' Compensation Programs*, 98 F.3d 1170, 1172 (9th Cir. 1996). As support for its extension of *Chevron* deference to the Director's litigating positions, *Mallott & Peterson* cited the Supreme Court's decision in *Martin v. Occupational Safety & Health Review Commission*, 499 U.S. 144 (1991). *See Mallott & Peterson*, 98 F.3d at 1172. *Martin*, however, stands for a different proposition—namely, that an agency's interpretation of *its own regulations* is not unworthy of deference simply because it is advanced as a litigating position in an administrative adjudication. *See Martin*, 499 U.S. at 156-58. That an agency's litigating position may be entitled to deference when the agency interprets *its own regulations* says nothing about whether such a position may be entitled to deference when the agency interprets the *statute* itself. *See Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 129 S. Ct. 2458, 2469-70 (2009) (distinguishing between deference to an agency's interpretation of its own regulations and deference to its interpretation of a statute).

Indeed, the proposition that *Chevron* deference extends to agency statutory interpretations advanced in litigation conflicts with the Supreme Court's more recent decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001). There, the Supreme Court held that *Chevron* deference applies only to agency statutory interpretations promulgated via "a relatively formal administrative procedure," such as notice-and-comment rulemaking. *Id.* at 230. An agency statutory interpretation adopted merely as a litigating position plainly fails this test.

Since *Mead*, our circuit has nonetheless continued to give *Chevron* deference to the Director's litigating positions. *See, e.g.*, *Gilliland*, 270 F.3d at 1262 (reaffirming post-*Mead* that "the Director's interpretation of the LHWCA is entitled to deference if it is contained either in a regulation or in the Director's litigation position within an agency adjudication, so long as the interpretation is reasonable" (emphasis removed)). As a consequence, we find ourselves in conflict with the decisions of three other circuits. *See Day v. James Marine, Inc.*, 518 F.3d 411, 418 (6th Cir. 2008) (accepting the Director's concession that his litigating position was not entitled to *Chevron* deference); *Pool Co. v. Cooper*, 274 F.3d 173, 178 n.3 (5th Cir. 2001) ("[I]t is now clear that when the Director advances interpretations of the LHWCA in litigation briefs, such interpretations merit not *Chevron* deference, but *Skidmore* deference."); *Ala. Dry Dock & Shipbuilding Corp. v. Sowell*, 933 F.2d 1561, 1563 (11th Cir. 1991) ("We owe deference to official expressions of policy by the Director, who does administer the statute, but settled law precludes us from affording deference to an agency's litigating position." (citation omitted)), *abrogated on other grounds by Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs*, 506 U.S. 153 (1993). Before this split of authority grows even wider, we should revisit in light of *Mead* our precedents governing the deference we owe the Director's litigating positions.

I respectfully suggest that the time is ripe for us to revisit our circuit's law governing the deference we owe the Director's litigating positions.