**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PACIFIC SHIP REPAIR AND
FABRICATION INC.,

　　　　　　　　　*Petitioner,*

　　　　　　　v.

DIRECTOR, OFFICE OF WORKER
COMPENSATION PROGRAMS; DEBORAH
BENGE,

　　　　　　　　　*Respondents.*

No. 11-70292

OWCP No.
10-0207

OPINION

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted
March 13, 2012—San Francisco, California

Filed July 24, 2012

Before: M. Margaret McKeown and Milan D. Smith, Jr.,
Circuit Judges, and Barbara Jacobs Rothstein,
Senior District Judge.*

Opinion by Judge McKeown

---

*The Honorable Barbara Jacobs Rothstein, Senior District Judge for the District of Western Washington, sitting by designation.

8427

## COUNSEL

Christopher M. Galichon and Scott Richard MacInnes (argued), Galichon & MacInnes, APLC, San Diego, California, for the petitioner-appellant.

Joshua Thomas Gillelan, II (argued), Longshore Claimants' National Law Center, Washington, DC; Rae Ellen James, Mark A. Reinhalter and Jonathan Peter Rolfe (argued), Office of the Solicitor, Washington, DC; Erick L. Richardson, U.S. Department of Labor, Long Beach, California, for respondent-appellee Office of Workers' Compensation Programs.

Jeffrey Winter, Law Office of Jeffrey Winter, San Diego, California, for respondent-appellee Deborah Benge.

## OPINION

McKEOWN, Circuit Judge:

The meaning of "permanent" appears, at first blush, to be clear. But just as a museum's permanent collection does not mean the works will stay in the collection for posterity and a permanent hair wave does not last a lifetime, neither does the term permanent necessarily mean forever. The word permanent takes on meaning in context and, in this case, within a statutory framework.

In the context of maritime employment, we consider an issue of first impression in this circuit: whether a partial "permanent" disability may be re-characterized as "temporary" during a period of recuperation. The label we affix does not affect whether the disabled employee is entitled to disability benefits; instead, it determines who pays the benefits—either the employer or the special workers' compensation fund. We affirm the decision of the Department of Labor's Benefits Review Board (the "Board") that an employee who has a permanent partial disability may be reclassified as temporarily totally disabled during a recovery period following surgery.

### BACKGROUND

Deborah Benge, a former employee of Pacific Ship Repair and Fabrication Inc. ("Pacific"), suffered neck and back injuries while working as a foreman on a ship in June 1999. Four months later, she returned to work for Pacific as a clerk.

Benge filed a disability claim under the Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), 33 U.S.C. § 901 *et seq.*, seeking compensation from Pacific for her work-related injury. The administrative law judge ("ALJ") found that Benge's disability resulted from the overlay of her 1999 injury on her pre-existing back and neck injuries. The parties stipulated that because Benge's condition had

reached "maximum medical improvement," she was incapable of returning to her previous position as a foreman; however, Benge retained residual wage-earning capacity in her lower-paying clerk position. The parties also stipulated, and the ALJ agreed, that because Benge still could work in some capacity, her disability at the time was partial (and not total), and that because her condition was not expected to improve, her disability at the time was permanent (and not temporary).

The ALJ ordered Pacific to pay all disability compensation due for the first two years of Benge's partial permanent disability; thereafter, beginning January 2002, the Office of Workers' Compensation Programs ("OWCP"), was ordered to make the payments. The Board affirmed the OWCP's appeal of the ALJ's decision.

The OWCP made partial permanent disability payments to Benge for the next five years. Benge's condition continued to deteriorate, and in 2007 she underwent a three-level discectomy and fusion of her cervical spine. Although her doctor anticipated that she would return to light-duty work after recuperating, Benge was unable to return to work. There is no dispute that, in the end, the surgery left Benge totally disabled.

According to the ALJ, the surgery was immediately followed by a nine-month "period of healing." Benge's condition then "abated" and reached "stationary status," at which point it became both total and permanent. Noting that under Board law, "a period of recuperation or healing" is characteristic of a temporary disability, the ALJ determined that the nine-month total disability immediately following the surgery was temporary in nature. This determination absolved the OWCP from making disability payments during this time period; instead, Pacific was liable for the payments.

Pacific appealed to the Board, contending that Benge's presurgery partial permanent disability remained permanent fol-

lowing her surgery because a disability once deemed permanent cannot transform into a temporary disability. The Board affirmed the ALJ, concluding that even if a disability is declared permanent, it may be later re-characterized as temporary when the underlying condition worsens and re-stabilizes following a surgical procedure.[1]

## ANALYSIS

The Longshore Act establishes a federal worker's compensation system for employees disabled or killed in the course of covered maritime employment. *See generally* 33 U.S.C. §§ 908, 909. It requires an injured worker's employer to pay all disability compensation owed to the employee, except in certain cases. Where a pre-existing condition contributes to the employee's post-injury permanent disability, § 8(f) of the Longshore Act limits an employer's liability for post-injury permanent disability payments to 104 weeks. 33 U.S.C. § 908(f). Thereafter, based on this pre-existing injury exception, an industry-financed "special fund," administered by the OWCP, pays the remaining permanent disability benefits due. *Id.* This special fund does not pay temporary disability benefits, whether partial or total. *See id.* § 944.

**[1]** Under the Longshore Act, there are four different categories of disabilities: permanent total disability; temporary total disability; permanent partial disability; and temporary partial disability. *Id.* § 908(a)-(c), (e). We have previously explained the statutory scheme:

---

[1]Even though the ALJ has yet to affix an amount of attorney's fees, Pacific also claims the ALJ improperly determined liability for attorney's fees. Because there is no final order regarding attorney's fees, this issue is not yet ripe for review and we do not address it in this appeal. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) ("[W]e think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain").

This statutory structure indicates two independent areas of analysis—*nature* (or duration) of disability and *degree* of disability. Temporary and permanent go to the nature of the disability. Total and partial go to the degree of the disability. This differentiation leads us to find maximum medical improvement to be an indication of permanent versus temporary disability and availability of suitable alternative employment to be an indication of partial versus total disability.

*Stevens v. Dir., Office of Workers' Compensation Programs*, 909 F.2d 1256, 1259 (9th Cir. 1990). We address here only the "nature (or duration)" of Benge's disability, not its degree.

**[2]** The terms temporary and permanent are not defined in the Longshore Act. In *Stevens*, we stated that a disability is temporary "so long as there [is] a possibility or likelihood of improvement through normal and natural healing." *Id.* at 1259 (citing *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir. 1968)). In other words, a disability remains temporary until the time the claimant reaches "maximum medical improvement," after which normal and natural healing is no longer likely. *Id.* at 1258; *Gen. Constr. Co. v. Castro*, 401 F.3d 963, 968 (9th Cir. 2005) ("After a claimant is shown to have attained maximum medical improvement, however, the remaining disability is classified as permanent." (internal quotation marks omitted)). The maximum medical improvement date "triggers a change in the classification of a claimant's disability from temporary to permanent." *Haw. Stevedores, Inc. v. Ogawa*, 608 F.3d 642, 653 (9th Cir. 2010).

**[3]** Our case law discusses only the transformation of a disability from temporary to permanent. While it is intuitively logical that a disability may transform from temporary to permanent once maximum medical improvement is reached, we must determine whether the transformation from permanent to temporary also passes muster.

The notion that a "permanent" disability is immutable has common-sense and linguistic appeal; re-characterization of a once-permanent disability as temporary may seem absurd. On the other hand, the fallacy of holding initial characterizations to be immutable is also apparent if a once-permanent disability improves or is completely cured, whether due to a remarkable recovery, advances in medical science, or other reasons. In other words, re-characterization of a disability may be necessary due to changed circumstances. Pacific's position that permanency is not a "fluid concept" ignores temporal changes.

**[4]** The Longshore Act permits the modification of a disability award order if the individual's condition changes over time. 33 U.S.C. § 922 (within certain time limits, "on the ground of a change in conditions . . . the deputy commissioner may . . . review a compensation case . . . [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation"). Other circuits also endorse re-characterization of a disability based on changed circumstances: "If an employee's condition does improve after he or she has been determined to be permanently disabled," the employer may have the employee's condition reevaluated. *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Compensation Programs*, 473 F.3d 253, 259 n.1 (6th Cir. 2007); *Watson*, 400 F.2d at 655 ("The determination that Watson is permanently disabled does not foreclose the possibility that his condition may change."). Neither the initial determination of the nature nor the degree of the disability appears to be cast in stone.

**[5]** A disability initially deemed permanent is not immutably so. An initial finding of medical stability may be later proven wrong or warrant reassessment depending on changed circumstances. Nothing in the Longshore Act limits re-characterizations to a one-way street from temporary to permanent; instead, the statute's broad thoroughfare allows for two-way traffic.

**[6]** This interpretation of the Longshore Act is consistent with the Director's position, which is cogently summarized in his brief:

> For more than two decades, the Director has consistently taken the view in administrative proceedings —and the Board has consistently held—that a permanent disability may become temporary during a period of exacerbation and healing of the underlying condition, regardless of whether the condition will be cured.

We "accord considerable weight to the construction of the statute urged by the Director of the Office of Workers' Compensation Programs, as he is charged with administering it. We will defer to the Director's view unless it constitutes an unreasonable reading of the statute or is contrary to legislative intent." *Price v. Stevedoring Servs. of Am., Inc.*, 627 F.3d 1145, 1148 (9th Cir. 2010) (internal quotation marks and citations omitted).

The Director focuses on the potential for improvement of a condition—not on the prospect of a complete cure of the underlying injury—as the decisive factor in determining whether a disability should be categorized as temporary under the Longshore Act. The Director's view is unsurprising since the state where "recovery merely awaits a normal healing period" is the definition of a temporary disability. *Watson*, 400 F.2d at 654. To be sure, this definition is uncontroversial in the mine-run case—where a claimant is recovering from an initial injury—but the Director invokes the same principle for a permanent disability that undergoes a period of healing: during such state of healing, the employee's disability may be re-characterized as temporary for purposes of apportioning liability under the Longshore Act. Put another way, initiation of a healing period serves as a "reset" button for a disability previously-determined to be permanent.

Characterizing an individual as temporarily disabled while she undergoes a healing process comports with our view that a disability is temporary "so long as there [is] a possibility or likelihood of improvement through normal and natural healing." *Stevens*, 909 F.2d at 1259 (citing *Watson*, 400 F.2d at 654). The prospect of a new maximum medical improvement point demonstrates the reasonableness of the Director's position. If an employee's partial permanent disability deteriorates and medical intervention leads to a new healing period, the employee's maximum medical improvement point can no longer be known *a fortiori*. Periods of healing related to a flare-up, relapse, surgery, or other major treatment could all lead to a new and unknown maximum medical improvement point based on the vicissitudes of the individual's responsiveness to medical treatment.[2] Of course, the temporary nature of the disability will again transform to permanent status when normal and natural healing is no longer likely. *See Ogawa*, 608 F.3d at 653.

Apart from challenging the concept of a permanent disability transforming into a temporary disability, Pacific also claims that the Director's position is unreasonable in this instance because Benge's maximum medical improvement point has always been clear. Because surgery was not expected to improve Benge's condition, the permanency of the underlying partial disability was never expected to change; therefore, Pacific argues, Benge's partial disability remained permanent and should not be re-characterized as temporary.

Although we have yet to address Pacific's claim, the Board was confronted with this very argument three decades ago:

---

[2]The nature of a disability may change due to surgery, and nothing in *Stevens*—which discusses transformation only from a total disability to partial—limits re-characterization solely to where there is a "second injury or aggravation." The Board correctly rejected this argument because Pacific was "responsible for the resultant disability in either case."

[A]lthough a temporary total award will subsume a permanent partial award for the same injury, an underlying permanent disability does not disappear during periods of temporary exacerbation. It stands to reason that if claimant is adjudged to have reached a state of permanent disability, a subsequent temporary exacerbation will not necessarily alter that finding. The 10 percent permanent partial disability finding in the instant case presupposed that claimant would retain at least a 10 percent partial disability, even though his condition might deteriorate either temporarily or permanently.

*Leech v. Serv. Eng'g Co.*, 15 B.R.B.S. 18, 22 (1982). The Board reasoned that even though the permanent disability itself persists through periods of "temporary exacerbation," an *award* for temporary total disability "will subsume" an award for a permanent partial disability stemming from the same injury because a total disability presupposes the loss of all wage-earning capacity. *Id.* at 21-22. The Board thus drew a critical difference between Longshore Act awards for temporary and permanent disabilities, and the disabilities themselves.

**[7]** Assuming Benge's underlying partial permanent disability was not expected to improve due to the surgery, *Leech* supports the determination that Benge was temporarily totally disabled under the Longshore Act because Benge lost all wage-earning capacity. The Board's decision relies on *Leech*, which mirrors the Director's interpretation. Taking into account the "considerable weight" we accord the Director's interpretation, we conclude that the Director's position—that an award for total temporary disability trumps, or subsumes, an award for any underlying permanent partial disability—is reasonable. We abide by the limitation that we "will not substitute our own construction for a reasonable interpretation made by the administrator of an agency." *Price*, 627 F.3d at 1148 (internal quotation marks omitted).

**[8]** There is no real dispute about the ALJ's factual finding that Benge was totally disabled following the surgery; rather, the appeal centers on transformation of a permanent disability into a temporary disability. We affirm the Board's decision and hold that under the Longshore Act, a prior finding of partial permanent disability does not preclude a later finding of temporary disability for the same underlying injury during a period of recovery following surgery. Because Benge's partial disability, which became permanent when she reached maximum medical improvement, may properly be re-characterized as a temporary total disability in accord with changed circumstances, Pacific is responsible for the temporary total disability payments.[3] Given the Board's long-standing position on this issue, we reject Pacific's claim that affirming the Board's decision will create unacceptable levels of uncertainty for employers. Similarly, we are not swayed by Pacific's somewhat surprising claim that sustaining the Board's position will dissuade potential employers from hiring individuals with disabilities. Apart from being a policy argument best made elsewhere, we trust that, as a practical matter, employers will respect legal constraints prohibiting discrimination against the disabled. *See, e.g.*, Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*

**PETITION DENIED**.

---

[3]Under the Longshore Act, "the employer shall provide *in addition to* compensation under subsections (b) [temporary total disability] and (e) [temporary partial disability] of this section, [disability] compensation . . . for one hundred and four weeks only." 33 U.S.C. § 908(f)(1) (emphasis added); *see also Sizemore v. Seal & Co.*, 23 B.R.B.S. 101, 103 (1989) ("Section 8(f) does not exempt employers from liability for paying temporary total disability benefits arising from an injury following the completion of the 104-week period of permanent partial disability liability for the same injury.").