**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STANLEY CHRISTIE,<br>*Petitioner*,<br><br>v.<br><br>GEORGIA-PACIFIC COMPANY; ACE AMERICAN INSURANCE COMPANY; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAM,<br>*Respondents*. | No. 17-70853<br><br>BRB No.<br>16-0321<br><br>OPINION |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted June 5, 2018
Portland, Oregon

Filed August 2, 2018

Before: Milan D. Smith, Jr. and Mary H. Murguia, Circuit Judges, and Alvin K. Hellerstein,* District Judge.

Opinion by Judge Murguia

---

*The Honorable Alvin K. Hellerstein, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

**Longshore and Harbor Workers' Compensation Act**

The panel granted a claimant's petition for review, reversed the Benefits Review Board's decision denying claimant disability benefits under the Longshore and Harbor Workers' Compensation Act, and remanded for a calculation of the permanent total disability benefits to be awarded to claimant.

The panel interpreted the language of 33 U.S.C § 902(10) defining "disability," and held that claimant's decision to retire early did not prevent him from receiving permanent total disability benefits. The panel further held that substantial evidence in the record supported the administrative law judge's findings that claimant was disabled with the meaning of the Act: he attained maximum medical improvement, he could no longer return to his previous employment, and the employer failed to establish that suitable alternative employment existed. The panel noted that the Board did not question the ALJ's factual findings, and remanded for calculation of an award of benefits.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Joshua Thomas Gillelan II (argued), Longshore Claimants' National Law Center, Washington, D.C.; Richard A. Mann, Brownstein Rask LLP, Portland, Oregon; Lara D. Merrigan, San Rafael, California; for Petitioner.

Stephen Verotsky (argued), Sather Byerly & Holloway LLP, Portland, Oregon, for Respondents.

**OPINION**

MURGUIA, Circuit Judge:

Stanley Christie, a longtime employee of the Respondent Georgia-Pacific Company ("Georgia-Pacific") in Portland, Oregon, injured his back at work in 1999. He returned to work following his injury but he eventually required surgery, which he underwent in 2004. Christie now asks us to decide if he is entitled to permanent total disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 (the "Act"), because of his work-related injury.

The parties do not contest that following his surgery, Christie faced physical limitations, and Georgia-Pacific reassigned Christie to less physically demanding safety inspection work sometime in 2006. In late 2010, Christie learned that the option to take early retirement would likely no longer exist beginning in January of 2011. Since Christie was still years away from reaching the retirement age of 62, in December of 2010 he decided to retire early and accepted an 18-percent reduction in monthly pension payments.

Years after he retired, Christie sought permanent total disability benefits as permitted by the Act. The administrative law judge ("ALJ") who considered Christie's claim awarded Christie permanent total disability benefits. Georgia-Pacific appealed the ALJ's decision to the United States Department of Labor's Benefits Review Board ("Board"), which reversed the award of benefits. Christie subsequently appealed to our court.

To determine Christie's eligibility for benefits, we interpret the language of 33 U.S.C. § 902(10), which defines "disability" under the Act. In particular, we consider whether Christie's decision to retire early prevents him from receiving permanent total disability benefits. After reviewing the plain language of § 902(10), we hold that Christie's decision to retire early does not make him ineligible for benefits. Our conclusion is in accord with a recent Fourth Circuit decision also interpreting § 902(10). Accordingly, we grant Christie's petition, and we reverse and remand.

## I.

### A.

In 1986, Christie began working for Georgia-Pacific in Portland, Oregon. Thirteen years later, Christie injured his back at work while moving bags of concrete. Although Christie returned to work following his injury, he eventually required surgery, which was performed in January of 2004. It is undisputed that Christie's back injury is a work-related injury.

In 2006, Georgia-Pacific assigned Christie to safety inspection duties in part to accommodate his physical limitations from his back injury. As safety inspector, Christie

was responsible for inspecting three Portland warehouses, which involved both active and sedentary tasks. Among other things, Christie created labels for materials in the warehouses detailing the contents and locations of items and who last inspected them. He also performed physical inspections, such as inspecting fire extinguishers, which sometimes involved lifting them. Due to his physical limitations, Christie had difficulty performing some of his job duties.

In late 2010, Christie learned from his labor union's director that Georgia-Pacific was likely eliminating early retirement in 2011. Under the early retirement option available to Christie in 2010, Christie could choose to retire after age 55 and accept a penalty reducing his monthly payments by 18 percent. Christie knew that without the early retirement option, he was ineligible for retirement income until age 62. Because Christie, then 56, believed he would be unable to continue working for another six years due to his physical limitations, he decided to retire early, effective December 1, 2010.

After Christie retired, several doctors evaluated him for multi-level back fusion surgery. Once the doctors determined that Christie should first pursue other treatment options before undergoing surgery, he began conservative pain treatment in May of 2012. By November of 2012, the doctor providing Christie with pain treatment believed Christie had reached his maximum medical improvement, meaning the injury had healed to the fullest extent possible. *See Stevens v. Dir., Office of Workers' Comp. Programs*, 909 F.2d 1256, 1257 (9th Cir. 1990). Christie's pain doctor also opined that Christie could not return to his regular job and was permanently restricted from several physical activities as of December 3, 2012.

Eventually, because of his physical limitations and inability to work, Christie filed a claim seeking permanent total disability benefits under the Act.

### B.

The ALJ held a hearing; heard testimony; reviewed the evidence presented, including Christie's medical records; and concluded that Christie was entitled to permanent total disability benefits. The ALJ ordered Georgia-Pacific to pay Christie these benefits from December 3, 2012 onward, because that was the date on which, according to the ALJ and based on the medical opinions in the record, Christie became disabled. In so ordering, the ALJ found that Christie was not disabled at the time he retired in December of 2010. However, the ALJ also determined that Christie's decision to retire did not bar Christie from receiving permanent total disability benefits because Christie's retirement was involuntary. Distinguishing Christie's case from other Board case law, the ALJ found that Christie did not retire "solely" because the early retirement package that he would receive was financially beneficial or a "good deal." Instead, the ALJ determined that Christie "testified credibly that he retired, at least in part, because he believed his back problems would not allow him to work until the full retirement age of 62, and he feared losing the ability to retire early."

On administrative appeal, the Board disagreed with the ALJ's conclusion. Relying on the Board's 2016 decision in *Moody v. Huntington Ingalls, Inc.*, 50 Ben. Rev. Bd. Serv. (MB) 9 (2016) ("*Moody I*") the Board reversed the ALJ's decision. The Board issued *Moody I* on the same day as the ALJ issued his decision in Christie's case. In reversing the ALJ, the Board cited *Moody I* and two other Board decisions—*Burson v. T. Smith & Son, Inc.*, 22 Ben. Rev. Bd. Serv. (MB) 124 (1989), and *Hoffman v. Newport News*

*Shipbuilding & Dry Dock Co.*, 35 Ben. Rev. Bd. Serv. (MB) 148 (2001)—for the proposition that "an employee is not entitled to receive a total disability award after he retires for reasons unrelated to the work injury because there is no loss of wage-earning capacity due to the injury." In the Board's view "'[d]isability' [under the Act] means incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment." In other words, an employee's injury must be the cause of the employee's inability to earn wages. And because the Board determined that Christie's loss of wages was due to his decision to retire early, and not because of his work-related injury, Christie was not entitled to benefits. This appeal followed.

## II.

We have jurisdiction to review the Board's decisions pursuant to 33 U.S.C. § 921(c). "The Board is required to 'accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence.'" *Stevedoring Servs. of Am. v. Dir., Office of Workers' Comp. Programs*, 297 F.3d 797, 801 (9th Cir. 2002) (quoting *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1284 (9th Cir. 1983)). We review the Board's decisions for "adherence to the [substantial evidence] standard." *Id.* (alteration in original) (quoting *Bumble Bee Seafoods v. Dir., Office of Workers' Comp. Programs*, 629 F.2d 1327, 1329 (9th Cir. 1980)). We also review the Board's interpretation of the Act de novo because such interpretations are questions of law. *Id*. Further, "[b]ecause the Board is not a policymaking agency, its interpretation of [the Act] is not entitled to any special deference." *Id.* (quoting *McDonald v. Dir., Office of Workers' Comp. Programs*, 897 F.2d 1510, 1512 (9th Cir. 1990)).

## III.

## A.

Under the Act, employees are entitled to obtain compensation for a permanent disability arising out of a work-related injury. *See Gen. Constr. Co. v. Castro*, 401 F.3d 963, 968–69 (9th Cir. 2005) (citing 33 U.S.C. §§ 902(2), 902(10), 908). The Act defines disability as:

> *incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment;* but such term [disability] shall mean permanent impairment, determined (to the extent covered thereby) under the guides to the evaluation of permanent impairment promulgated and modified from time to time by the American Medical Association, in the case of an individual whose claim is described in section 910(d)(2) of this title.

33 U.S.C. § 902(10) (emphasis added).[1] A disability is permanent when a claimant has "attained 'maximum medical improvement.'" *Gen. Constr. Co.*, 401 F.3d at 968

---

[1] The latter portion of § 902(10), beginning with "but such term," concerns "claim[s] based on a death or disability due to an occupational disease," *see* 33 U.S.C. § 910(d)(2), which are different from the disability claim at issue here. *See Gen. Constr. Co.*, 401 F.3d at 968 ("The [Act's] compensation scheme distinguishes between injury, which is a physical impairment, 'occupational disease[,] or infection,' and disability, which the [Act] defines as the 'incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment.'" (second alteration in original) (citations omitted) (quoting 33 U.S.C. § 902)). The latter portion of § 902(10) therefore does not apply to the present case.

(quoting *Stevens*, 909 F.2d at 1258). "Maximum medical improvement is attained when the injury has healed to the full extent possible." *Stevens*, 909 F.2d at 1257. To obtain permanent total disability benefits under the Act, an employee must show: (1) he is disabled within the meaning of the Act, (2) the work-related injury he suffered that makes him disabled has healed to the fullest extent possible, and (3) he cannot return to prior employment. *See Gen. Constr.*, 401 F.3d at 968–69. In addition, for the employee to obtain benefits, the employer must fail to establish that alternative employment, which the employee can perform, is available to the employee. *Id.* at 969.

Whether the Board erred in reversing the ALJ's award of permanent total disability benefits to Christie turns on the proper interpretation of "disability" under § 902(10) of the Act. According to the Board, "[t]he only relevant inquiry [in determining disability under the Act] is whether claimant's work injury caused a loss of earning capacity." The Board answered this question by concluding that because Christie voluntarily retired, he was not disabled within the meaning of § 902(10).

In its decision reversing the ALJ's award of benefits, the Board relied heavily on its decision in *Moody I*, and stated that Christie's case was "not legally distinguishable from *Moody* [*I*]." In *Moody I*, claimant Russell Moody had sought temporary total disability benefits. *Moody I*, 50 Ben. Rev. Bd. Serv. (MB) at 9–10. There, the ALJ had awarded Moody temporary total disability benefits because the ALJ found that Moody's retirement prior to the time of his surgery was irrelevant. *Id.* at 10. In reversing the ALJ's benefit award, the Board concluded that the disability inquiry under § 902(10) of the Act, which defines disability for purposes of the Act, "encompasses both physical and economic

considerations." *Id.* The Board reasoned that Moody's decision to retire "had already resulted in his complete loss of earning capacity" and Moody was therefore not disabled within the meaning of the Act. *Id.* at 11. In short, the Board interpreted § 902(10) to mean that retirement necessarily *causes* a loss of wage-earning capacity.

However, because the proper interpretation of § 902(10) is a question of law, the Board's interpretation of § 902(10) in *Moody* is not binding and our review is de novo. *See Stevedoring Servs. of Am.*, 297 F.3d at 801.

We begin our analysis with the relevant statutory language. *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) (en banc) ("In construing the provisions of a statute, we begin by looking at the language of the statute to determine whether it has a plain meaning."). In a statute, a legislature says "what it means and means in a statute what it says there." *Id.* (quoting *BedRoc Ltd. v. United States*, 451 U.S. 176, 183 (2004)). If a statute's language is plain and unambiguous, our inquiry ends. *Id.* Where statutory language is ambiguous, however, we may consider legislative history and other extrinsic materials. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

The Act specifically defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). The "injury" must be an "accidental injury or death arising out of and in the course of employment." *Id.* § 902(2).

The plain language of § 902(10) makes no reference to retirement or its timing, nor to whether an employee decides

to retire voluntarily or involuntarily. Rather, § 902(10) states that disability under the Act means an inability, resulting from an injury suffered at work, to earn the wages an employee was earning from his employer at the time he was injured. Nowhere in § 902(10) is an employee's decision to retire mentioned.

Indeed, the Board's reading of § 902(10) assumes that retirement categorically results in a person's incapacity to work. Yet, the language of § 902(10) does not give any indication that retirement is to be treated in that manner. Neither is it the case that retirement, in all instances, means that a retiree is incapable of working. Retirement simply means that a person is no longer working a particular job. In short, although retirement and incapacity to work may be linked, they are not necessarily one and the same. We conclude that the Board's reading of § 902(10) is overly restrictive and unsupported by the plain language of the statute.

Georgia-Pacific urges that the Board is correct that § 902(10) precludes an employee from obtaining disability benefits after an employee voluntarily retires because the employee cannot establish a loss of wage-earning capacity resulting from a work-related injury. Georgia-Pacific cites to three Board decisions—*Burson*, *Hoffman*, and *Moody I*—to support its argument, asserting that the "Board's standard reasonably interprets § 902(10) of [the Act] and balances the interests of the injured worker and employer." Georgia-Pacific's arguments are unavailing. As discussed above, the plain language of § 902(10) belies the purported relevance of an employee's decision to retire.

Further, the Fourth Circuit's reasoning in *Moody v. Huntington Ingalls Inc.*, 879 F.3d 96 (4th Cir. 2018) ("*Moody II*")—which overruled the Board's decision in

*Moody I*—is persuasive. In *Moody II*, the Fourth Circuit interpreted the same statutory language at issue here, § 902(10) of the Act. *Id.* at 101. The Fourth Circuit rejected the Board's interpretation of § 902(10). *Id.* In holding that voluntary retirement does not preclude the existence of a disability under the Act, the *Moody II* court looked to the text of § 902(10) and concluded that the Board and the employer in *Moody I* misconstrued the plain meaning of "incapacity" and "the real-world significance of retirement." *Id.* at 98. Rejecting the Board's "interpretation that an employee's retirement necessarily makes him incapable of earning any wages," the *Moody II* court noted that "incapacity" means "inability," "incompetence," and "incapability." *Id.* at 99. The *Moody II* court further explained that retirement is not inherently debilitating and that the Board and the employer in *Moody I* "confuse being *unwilling* with being *unable* [to work]" by focusing on the voluntary nature of Moody's retirement. *Id.*

The *Moody II* court further held that the Board "erroneously equate[d] loss of earning capacity with loss of actual earnings," concluding that the "law compensates [an employee's inability to make the choice to work] when it is caused by workplace injury." *Id.* at 99–100. The Fourth Circuit also held that "retirement status, standing alone, is *irrelevant* to earning capacity and the determination of 'disability' under 33 U.S.C. § 902(10)." *Id.* at 100 (emphasis added).**[2]** Here, *Moody II* is particularly persuasive because

---

**[2]** In addition, the *Moody II* court discussed the Act's purpose in reaching its decision. Acknowledging that the Supreme Court "has recognized that 'the [Act] represents a compromise between the competing interests of disabled laborers and their employers,'" the Fourth Circuit explained that it gave effect to that compromise by "applying the plain text" of the Act. *Moody II*, 879 F.3d at 100 (quoting *Potomac Elec. Power Co. v. Dir., Office of Workers' Comp. Programs,*

the Board relied on *Moody I* to overturn the ALJ's award of benefits to Christie.**[3]**

Accordingly, a plain reading of § 902(10) reveals that the Board committed legal error in reversing the ALJ's award of benefits to Christie. We therefore join the Fourth Circuit in rejecting the Board's interpretation of § 902(10).

**B.**

To obtain permanent total disability benefits, Christie must show that he is disabled within the meaning of the Act and that he has attained maximum medical improvement, meaning his injury has healed to the fullest extent possible. *See* 33 U.S.C. §§ 902(10), 908; *see also Gen. Constr. Co.*, 401 F.3d at 968; *Stevens*, 909 F.2d at 1257. Christie must also show that he cannot return to prior employment, and Georgia-Pacific must fail to establish that there is suitable alternative employment available to Christie. *Gen. Constr. Co.*, 401 F.3d at 968–69.

Here, the ALJ granted Christie permanent total disability benefits, payable from December 3, 2012, onward. The

---

449 U.S. 268, 281–82 (1980)). We agree that the plain language of § 902(10) realizes the statute's purpose.

**[3]** The Board's reliance on *Burson* and *Hoffman* also does not change the outcome of this case. Both *Burson* and *Hoffman* erroneously relied on the voluntary retirement of the respective employees in those cases as the factual predicate for each employee's inability to establish their loss of wage-earning capacity. But, as discussed above, because the plain language of § 902(10) reflects that an employee's retirement is not dispositive to determining disability under the Act, *Burson* and *Hoffman* do not compel us to reach a different conclusion than the one we reach today. 33 U.S.C.§ 902(10); *see Hoffman*, 35 Ben. Rev. Bd. Serv. (MB) at 150; *Burson*, 22 Ben. Rev. Bd. Serv. (MB) at 127.

Board was required to accept the ALJ's factual findings "unless they [were] contrary to law, irrational, or unsupported by substantial evidence." *Stevedoring Servs. of Am.*, 297 F.3d at 801 (quoting *Todd Shipyards Corp.*, 717 F.2d at 1284). We review the Board's decision for adherence to the substantial evidence standard. *See id.*

The ALJ's determination that Christie was disabled as of December 3, 2012, was based on numerous doctors' opinions. Most notably, Christie's back pain doctor concluded on December 3, 2012, that Christie could not return to work. The Board did not disagree with this factual finding. Nor did the Board disturb the ALJ's other factual findings. Therefore, the ALJ's factual findings must be upheld since they are not "contrary to law, irrational, or unsupported by substantial evidence." *See id* (quoting *Todd Shipyards Corp.*, 717 F.2d at 1284).

Georgia-Pacific failed to establish that suitable alternative employment was available to Christie. Although the Board and Georgia-Pacific highlight that Christie was capable of working as a safety inspector at Georgia-Pacific with suitable accommodations at the time he retired, substantial evidence supports the ALJ's finding that Georgia-Pacific never actually offered these accommodations to Christie. Indeed, the ALJ concluded that no one at Georgia-Pacific told Christie that Christie could ask for help with conducting the physical inspections of the warehouses that were part of Christie's work tasks. In addition, the ALJ found that Georgia-Pacific had not documented any accommodations the company made for Christie. Georgia-Pacific therefore "fail[ed] to establish the availability of suitable alternative employment" because it failed to offer Christie a job that accounts for his physical limitations. *See Gen. Constr. Co.*, 401 F.3d at 968–69

(explaining that an employer fails to establish the availability of suitable alternative employment by, among other things, failing to identify a job that an employee can perform considering his or her limitations).

Substantial evidence in the record therefore supports the ALJ's findings that Christie is disabled within the meaning of the Act: he attained maximum medical improvement, he can no longer return to his previous employment, and Georgia-Pacific has failed to establish that suitable alternative employment exists. Accordingly, the Board erred in reversing the ALJ's decision awarding benefits. *See Stevedoring Servs. of Am.*, 297 F.3d at 801.

## IV.

In sum, we hold that retirement status alone, in and of itself, is not dispositive to determining disability under the Act. In reversing the ALJ's award of permanent total disability benefits to Christie, the Board erred in relying on *Moody I*, which misinterprets § 902(10). Further, the Board did not question the ALJ's factual findings and substantial evidence supports the ALJ's award of benefits. We therefore grant Christie's petition, reverse the Board's decision denying Christie benefits, and remand for a calculation of the permanent total disability benefits to be awarded to Christie.

**PETITION    GRANTED;    REVERSED    AND REMANDED.**